UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERIKA L. MCNAMARA and
WILLARD F. WARREN

v.                                            CASE NO. 8:17-cv-3060-SDM-CPT

GOVERNMENT EMPLOYEES
INSURANCE COMPANY

_____/

**ORDER ON MOTIONS *IN LIMINE***

I.

GEICO moves (Doc. 200) *in limine* to exclude evidence or argument about "(I) personal opinions of insurance companies, (II) GEICO's advertising campaigns, and (III) payment or non-payment of insurance premiums." The plaintiffs offer no response to the motion, and under the Local Rules the motion is treated as unopposed. A review of the motion, including the cited authority, confirms the merit of the motion, which is **GRANTED**, except that the plaintiffs may state the "general concept" that the insurance company receives a premium in exchange for insurance coverage for the persons and for the risks identified in, and not excluded or excepted from, the policy.

II.

GEICO moves (Doc. 201) *in limine* to exclude evidence or argument about the "photograph of Deborah Lambert's motorcycle/saddlebag and [the] photograph of

the wedding invitations for Deborah Lambert's and Kenneth Bennett's wedding." The plaintiffs respond (Doc. 217) in opposition. GEICO argues that the photographs are irrelevant to this bad faith action, were unknown to GEICO during the pertinent time, played no part in the handling of a claim, and are offered only "to improperly elicit sympathy, to attempt to curry favor with the jury, and ultimately [to] prejudice the jury against GEICO." The plaintiffs respond that the photograph helps establish "the totality of the circumstances in this case." However, the image of a "soiled saddle bag that contained the destroyed wedding invitations" is more likely to prejudicially inflame, rather than helpfully inform, the jury. The totality of the pertinent circumstances is fully explicable without the presence of an irrelevant and provocative photograph. For these reasons and others discussed by GEICO, the motion (Doc. 201) is **GRANTED**.

### III.

GEICO moves (Doc. 202) *in limine* to exclude any evidence or argument about "GEICO's claims manual, code of conduct, and training materials." The plaintiffs fail to respond to the motion, and under the Local Rules the motion is treated as unopposed. A review of the motion, including the cited authority, confirms the merit of the motion. As to evidence, argument, or comment within the hearing of the jury, the motion (Doc. 202) is **GRANTED**.

### IV.

GEICO moves (Doc. 203) *in limine* to exclude evidence or argument about an alleged violation of the Adjuster Code of Ethics or the alleged "mishandling" of a

lien in favor of Tampa General Hospital. Because the plaintiffs "agree to the relief sought by GEICO" (Doc. 218 at ¶ 3) with respect to the Adjuster Code of Ethics, the motion (Doc. 203) is **GRANTED** as to any evidence, argument, or comment within the hearing of the jury about a violation of the Adjuster Code of Ethics. The plaintiffs' experts apparently intend to offer testimony that GEICO's issuing a check for the policy limit jointly to the insured's guardian and the hospital evidences GEICO's alleged bad faith and fails the standard of *Farinas v. Florida Farm Bureau Gen. Ins. Co.*, 850 So.2d 555 (Fla. 2003). But, as stated in *Bell v. GEICO Gen. Ins. Co.*, 489 Fed. Appx. 428 (11th Cir. 2012), affirming Judge Scriven's opinion in the district court, "Florida courts have long held that an insurer faced with competing demands for payment from the insured and a hospital has the option to 'ma[k]e a check for the limits [of the policy] payable to both of the competitors, the hospital and the insured.'" The motion (Doc. 203) is **GRANTED** as to any evidence, argument, or comment within the hearing of the jury that GEICO's payment jointly to the insured's guardian and to the hospital constituted, contributed to, or assists in establishing bad faith.

V.

GEICO moves (Doc. 204) *in limine* to exclude evidence or argument based on GEICO's adjusters' personnel files, produced in discovery under a confidentiality agreement. GEICO argues primarily from the principles of Rules 403 and 404(b), Federal Rules of Evidence, and especially from the typically objectionable nature of "propensity evidence." The plaintiffs respond (Doc. 219) by requesting a denial of

- 3 -

"the motion without prejudice with the understanding that counsel shall approach the bench and get a [] ruling before discussing or mentioning specific portions of the personnel file." In general, the plaintiffs' proposed solution is agreeable, but the meaning of "specific" is always a question for debate. The motion (Doc. 204) is **DENIED WITHOUT PREJUDICE**, but neither evidence of, nor argument or comment within the hearing of the jury about, the adjusters' personnel files can occur before counsel receives permission from the presiding judge after a discussion outside the hearing of the jury. The content of the disputed files is likely excludable unless counsel can state a permissible purpose for the evidence that outweighs whatever prejudice or distraction the evidence might create, that is, unless counsel states a permissible inference that the jury can draw from the evidence, that is not merely an inference of propensity, and that is more probative than any prejudicial inference the jury might draw from the evidence.

## VI.

GEICO moves (Doc. 205) *in limine* to preclude the plaintiffs' questioning GEICO's adjusters about "their knowledge or understanding of bad faith law in Florida" or "elicit[ing] testimony from adjusters to describe what bad faith is, or what they believe to be bad faith under Florida law." GEICO argues that an adjuster's understanding of bad faith law in Florida is "irrelevant and invades the purview of the Court" to instruct the jury on the law. The plaintiffs fail to respond. The motion (Doc. 205) is **GRANTED**, and the plaintiffs are precluded from eliciting evidence from the adjusters about, or arguing or commenting about, the adjuster's knowledge

- 4 -

of bad faith law in Florida, but the adjuster's understanding of the law at the time of a pertinent event might remain admissible if, for example, the adjuster's understanding is otherwise admissible and explains an action by the adjuster.

VII.

GEICO moves (Doc. 206) *in limine* to preclude evidence or argument regarding "Deborah Randall Lambert's ongoing injuries, medical problems, or limitations that allegedly stem from the accident." The plaintiffs respond (Doc. 220) that the only evidence of this nature they will offer is "that she remains incapacitated and that Curran K. Porto, Esq., is now the guardian of her property." As to evidence, argument, or comment within the hearing of the jury, the motion (Doc. 206) is **GRANTED**, except for evidence that Porto is the guardian of Lambert's property.

VIII.

GEICO moves (Doc. 207) *in limine* to preclude evidence or argument "that GEICO['s] seeking legal advice from and/or retaining counsel regarding extra-contractual/bad faith matters resulting from the underlying claim is evidence of bad faith." This disputed evidence apparently includes communications in pursuit of, or as a consequence of, legal advice from Young, Bill, Boles, Palmer, Duke & Thompson ("YBBPDT"). GEICO insists (1) that "[w]hen and why GEICO sought legal advice and/or retained its bad faith counsel is, and the handling of the extra-contractual claim by the GEICO adjuster is, not only subject to the attorney-client and/or work-product privileges, but it is immaterial and irrelevant to whether GEICO acted in bad faith" and (2) that "it would be highly prejudicial" to allow the plaintiffs to argue that

- 5 -

retaining counsel and receiving and acting on (or not) counsel's advice "impl[ies] that GEICO believed or knew it acted in bad faith."  The plaintiffs respond that retaining counsel to advise the "extra-contractual" adjuster and the fact that the February 10, 2012 letter was drafted by counsel (about which the adjuster might have misstated) create questions about "whether GEICO was providing its insureds with truthful and candid communications regarding its handling of the claim and the reasons why the claim had not settled," specifically, "whether Summers' communications with McNamara and Warren were truthful, complete, and free of self-dealing." The plaintiffs argue that "Summers' decision on January 25, 2012 to engage and retain Young's firm . . . is relevant evidence that should be considered by the jury in considering the 'totality of the circumstances.'"

    The magistrate judge found (correctly) that "nothing prevents a claims adjuster from seeking legal counsel on potential bad faith issues" and that "[r]equesting legal advice, in and of itself, does not breach the adjuster's fiduciary duty to the insured." (Doc. 89 at 8) Following from that principle is the conclusion that, absent an additional, sufficient, and proper factual predicate to the contrary, a party cannot argue to the jury that retaining "extra-contractual" or "bad faith" counsel is *per se* evidence of bad faith toward the insured.  An insurer that perceives a need for independent legal advice about a prospective bad faith claim, either a first-party claim or a third-party claim, can retain "bad faith" counsel and receive and implement the resulting advice without exposure to the argument that the receipt of legal advice is *per se* evidence of bad faith (and, reciprocally, an insured's retention of counsel *per se* is

not evidence of a design to "set-up" a claim, including a claim for bad faith, against the insurer).  But, as the magistrate judge ruled, "to the extent there are draft letters or other communications between Summers and Sanders during the time . . . from September 19, 2010 to April 12, 2012, . . . such matters should be disclosed."  In other words, absent a sufficient factual predicate, acquiring and implementing legal advice creates no permissible inference of bad faith and the normal protection of the attorney-client privilege applies unless waived.  However, the content of a communication, if otherwise admissible, to someone outside the protection of the privilege, even if the provenance of the communication is "bad faith" counsel, is available for presentation as evidence and available to support an argument based on a permissible inference.

The motion (Doc. 207) is **GRANTED-IN-PART** in accord with Part VIII of this order and with the magistrate judge's order (Doc. 89).  In particular, the fact that counsel was retained, the time of the retention, and the fact that counsel participated in preparing a letter is neither privileged nor, for that reason, inadmissible (but, of course, the content of legal advice is privileged and inadmissible, absent a waiver).  But, absent a sufficient factual predicate to the contrary, these facts alone permit no inference or argument of bad faith.

IX.

GEICO moves (Doc. 208) *in limine* to exclude from evidence "any fact outside the relevant time frame of September 19, 2010, the date of the underlying accident, through January 6, 2012, the date Kenneth Bennett, as the limited guardian of

Deborah Randall Lambert [], revoked all settlement offers and rejected GEICO's tender of the policy limits." In response, contrary to the limits proposed by GEICO, the plaintiffs acknowledge the temporal limitation of discovery "to the period between September 19, 2010 when the claim was first reported to April 12, 2012 when GEICO's adjuster wrote Bennett's counsel acknowledging that Kenneth Bennett had filed a third-party lawsuit against Warren and McNamara" but argue for the possible admissibility of evidence, for example, of "ongoing efforts to resolve the pending claims including a follow up letter from attorney Bowen on January 23, 2012" and "the actions taken by adjuster Summers after receipt of Bowen's January 6, 2012." The plaintiffs offer in resolution of the motion to "not introduce evidence of conduct after April 12, 2012 without first approaching the Court and identifying the potential evidence and the reason for its relevance. GEICO's motion (Doc. 208) is **DENIED WITHOUT PREJUDICE** but neither evidence of, nor argument or comment within the hearing of the jury about, activity after January 6, 2012, can occur before counsel receives permission from the presiding judge after a discussion outside the hearing of the jury. A more definitive ruling will occur when and if necessary and after the nature and extent of any post-January 6, 2012 evidence is clarified.

X.

The plaintiffs move (Doc. 210 at part I) *in limine* to exclude both expert and lay opinion evidence about Kenneth Bennett's motive, intent, belief, and state of mind. The plaintiffs explain that opinion testimony about these topics is "speculative and improper," is irrelevant if directed to "unexpressed" matters, is inadmissible

because the opinion is more prejudicial than probative, is outside the proper bounds of expert or lay opinion testimony, and is otherwise unhelpful to the jury, which is well able and well situated — with the benefit of the evidence, the argument of counsel, the observations of the other jurors — to assess and determine what, if anything, a preponderance of the evidence establishes about motive, intent, belief, and state of mind. GEICO responds (Doc. 214) that "Bennett's and his attorney's conduct, state of mind, and motives, which are part of the 'totality of the circumstances,' are entirely relevant as to whether GEICO could have settled Bennett's BI claim within the applicable policy limits." GEICO adds that Bennett and his counsel "engaged in a pattern of avoidance, delay, and refusal to communicate with GEICO" that evidence "whether the claim could have settled and whether Bennett and Bowen were willing to settle for the policy limits." GEICO concludes by stating, "GEICO intends to present evidence and testimony that Bennett's and/or Bowen's conduct in the underlying action reflects an unwillingness to settle the claim [], and that unwillingness deprived GEICO of a realistic opportunity to settle."

Other than the parties' inability to agree on much of anything, not much in the papers evidences a material disagreement between the parties about the permissible proof on the present topic. The pertinent distinction, evident in each party's argument and likely to control the admissibility of evidence on the issue at hand, is the distinction between testimony evidencing conduct and testimony evidencing someone's surmise and speculation. Testimony about conduct, which (if not otherwise objectionable) is admissible, reveals pertinent history based on the testimony of

- 9 -

someone who saw or reliably knows the events in question, that is, someone in a position to know what happened or did not happen, who said or failed to say what, what was seen or heard or said or done or not, who was where and when, and the like. Surmise and speculation are generally conclusory and subjective, not so much evidence of an event as a generalization about, a subjective interpretation of, or a mere perspective based on, an event and not an account of the event itself. If not otherwise objectionable, evidence of conduct is admissible and surmise and speculation, especially about elusive intangibles such as motive and intent, are not. To offer a quick example: If an insurer offers to settle a claim for X dollars, and the insured responds loudly, "Go to hell and take your offer and your mother with you," firsthand testimony about the offer and response is sufficient for the jury to consider the insured's state of mind (if that is relevant); the jury is not assisted, even a little, by an "expert" or other opinion that the insured was unwilling to settle. A qualified expert certainly can testify, if not otherwise objectionable, about industry standards, about established practices, and the like and opine, based on the evidence and other factors on which a reasonable expert in the field would normally rely, about compliance with or departures from those standards and practices.

In this instance, the plaintiffs' motion (Doc. 210 at part I) is **GRANTED** to the extent that GEICO cannot elicit mere opinion testimony about the motive, belief, and state of mind of Bennett. Of course, GEICO can elicit evidence, to the extent otherwise relevant and not otherwise inadmissible, about conduct and other perceptible matters probative of motive, belief, and state of mind.

XI.

The plaintiffs move (Doc. 210 at part II) *in limine* to exclude evidence offered by GEICO in an attempt "to criticize the manner in which [the Swope Rodante firm] advised Bennett to proceed in connection with Lambert's injury claim against the Plaintiffs" and "to vilify the Swope Rodante firm [and] to attack their character or 'personal injury lawyers' or 'bad faith lawyers' in general." In response, GEICO characterizes the motion as "a thinly veiled attempt to preclude GEICO from introducing relevant and admissible evidence related to the Swope firm's conduct, actions, and motivations in the underlying action." Again, as stated in part X of this order, the parties exchange heated accusations, but both appear to understand that evidence of conduct is admissible, that is, history is admissible, but opinions comprising speculations about bad motive are not. The facts of the case either will or will not establish bad motive or the like, but the witnesses will not advance mere speculation about character and motive. For the reasons stated in part X of this order and to the same extent, the motion (Doc. 210 at part II) is **GRANTED**.

XII.

The plaintiffs move (Doc. 210 at part III) *in limine* to exclude evidence "suggesting that GEICO never had a realistic opportunity to settle Lambert's claims within GEICO's available policy limits." For the reasons stated in GEICO's response, the motion is **DENIED**.

XIII.

The plaintiffs move (Doc. 210 at part IV) *in limine* to exclude evidence "that GEICO had a legal obligation to include Tampa General Hospital ("TGH") as a payee on any settlement check issued in connection with Lambert's bodily injury claim" and "that language in the TGH admission documents created an irrevocable assignment of the benefits that required TGH to be included as a payee on any settlement draft issued to or on behalf of Lambert."  GEICO responds that the plaintiffs "mischaracterize" the prospective evidence and that GEICO claims only that "inclusion of TGH on the settlement check to Lambert was proper claims handling and consistent with Florida law" and that "it is proper for the insurer to issue the check payable to both the lien[holder] hospital and the claimant or the insured."  The difference between the parties' arguments, again, is a matter of posturing and quibbling and not substance.  The plaintiffs attribute to GEICO the claim of "obligation" — but GEICO aspires only to a claim of propriety — in issuing a check jointly to a lienholder and an insured.  The parties apparently agree that the law of Florida permits, but does not compel, issuance of a check to both payees.

To the extent that GEICO cannot adduce evidence or argue that Florida law requires a joint check, the motion (Doc. 210 at part IV) is **GRANTED**.  Of course, GEICO can offer evidence of the circumstances, including their receiving, if they did, notice of a lien and evidence of the consequence of ignoring a known lien, to evidence that the form of the check was not an act of bad faith but of reasonable claim management.  On the other hand, the plaintiffs can adduce evidence of the options, if

any, reasonably available to but declined by GEICO, that might evidence bad faith in claim management.  To the extent that the motion (Doc. 210 at part IV) requests exclusion of evidence about an "assignment of benefits," the motion is **DENIED WITHOUT PREJUDICE** because the pertinent facts are too incomplete and disputed to permit an informed determination before trial.

### XIV.

The plaintiffs move (Doc. 210 at part V) *in limine* to exclude "testimony that Plaintiffs have not paid any portion of the final judgment entered against them and are either unwilling or unable to pay off that judgement."  To that extent, the motion (Doc. 210 at part V) is **GRANTED**.  But GEICO denies the intent to elicit testimony to that effect and announces, instead, the intent to elicit testimony to prove "the amount of the Final Judgment ($474,000 and $4,740,000), pursuant to stipulation, entered in favor of Bennett and against Plaintiffs."  To the extent that the plaintiffs' motion is directed toward proof by GEICO of the amount of the stipulated judgment, the motion (Doc. 210 at part V) is **DENIED**.

### XV.

The plaintiffs move (Doc. 210 at part VI) *in limine* to exclude evidence of "the amounts which Plaintiffs, Plaintiffs' counsel, Bennett and/or Bennett's counsel stand to recover from this lawsuit, should Plaintiffs prevail."  GEICO responds that the evidence "is relevant to their financial bias and is evidence of whether they were willing to settle for the policy limits" and cites *Buckley Towers*, 2008 WL 5505415, and *League of Women Voters*, 132 So.3d 135 at 148, neither of which is (to say the very least)

persuasive (and the reason for citation of the latter remains a mystery). The motion (Doc. 210 at part VI) is **GRANTED**.

## XVI.

The plaintiffs move (Doc. 210 at part VII) *in limine* and based on "collateral estoppel" to exclude evidence offered by GEICO in an "attempt to re-litigate certain issues that were determined in the underlying auto negligence case, such as liability and/or the value of Lambert's part and future medical expenses and damages." For reasons stated by GEICO in response, including that GEICO intends to offer no evidence "re-litigating" the "underlying auto negligence case," the motion (Doc. 210 at part VII) is **DENIED**.

## XVII.

The plaintiffs move (Doc. 211) "to strike" GEICO's expert Kathy Maus and to "exclude her testimony from any further proceedings." The plaintiffs argue that Maus "is unfit to opine about any relevant insurance industry standards, practices, or customs because her only relevant professional experience or training in the adjustment of personal automobile insurance claims or in the management of insurance claims personnel occurred over thirty years ago when she worked briefly for Aetna before attending law school," that her methods and principles are unreliable, and that she "seeks to provide inadmissible legal conclusions and parrot defense counsel's closing argument." GEICO responds (Doc. 213) that the qualification of a witness to testify in the form of an expert opinion is informed by comparing the knowledge, skill, experience, training, and education of the proposed witness to the subject of the

proposed testimony; that Maus's "legal practice over the past thirty-two years has focused on insurance coverage, prudent claims practices, [and] bad faith litigation in Florida and has run the gamut of the insurance defense field and claims handling"; and that Maus "regularly teaches and instructs insurers on claims handling practices, has spoken individually and as a panelist at numerous seminars." As well, among her other qualifications, Maus "is a graduate of Florida State's Risk Management and Insurance Program and also worked as a licensed insurance adjuster for Aetna for over two years." Of course, Florida's state and federal courts have regularly permitted otherwise qualified lawyers, including Maus, to testify as an expert in bad-faith litigation. The plaintiffs' motion (Doc. 211) is **DENIED**.

The parties are reminded and cautioned that, as the plaintiffs argue (Doc. 211 at 14–16), although an opinion is not objectionable because the opinion "embraces an ultimate issue," a witness cannot testify to the jury as to the proper conclusion for the jury to reach about whether GEICO acted in good faith or bad faith. Questions from counsel and responses from witnesses that conform to, and comply with, this sometime elusive distinction requires professionalism and attention by counsel (something well within the ability of the experienced counsel and expert witnesses in this action; neither gamesmanship nor brinkmanship will result in a good end for those who attempt either).

No party may move *in limine* again in this action without leave of court, which is available only by a motion not exceeding three pages (no response is permitted unless requested).

ORDERED in Tampa, Florida, on March 19, 2024.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE